## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| KEVORK ALTOUNJIAN,<br><br>Plaintiff,<br><br>v.<br><br>JUUL LABS INC.; ALTRIA GROUP, INC.; PHILIP MORRIS USA INC.; AND LIT SMOKE SHOP, LLC,<br><br>Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) |

Case No. ___

Action Filed: September 23, 2019
Action Served:  October 8, 2019

### DEFENDANTS JUUL LABS, INC., ALTRIA GROUP, INC. AND PHILIP MORRIS USA INC.'S NOTICE OF REMOVAL

Pursuant to 28 U.S.C. §§ 1332, 1441, and 1446, Defendants JUUL Labs Inc. ("JLI"), Altria Group, Inc. ("Altria"), and Philip Morris USA Inc. ("PM USA") (together, the "Removing Defendants") hereby remove this action from the Superior Court of New Jersey, Bergen County, Civil Division, where it is pending as Case No. BER-L-006723-19, to the United States District Court for the District of New Jersey.  The Court has original jurisdiction over this action under 28 U.S.C. § 1332 because complete diversity of citizenship exists between Plaintiff and the properly joined Defendants and the amount in controversy exceeds $75,000, exclusive of interest and costs. The citizenship of the remaining Defendant, Lit Smoke Shop, LLC, should be disregarded because it is not properly joined in this lawsuit but instead was fraudulently joined for the sole purpose of destroying diversity.  Alternatively, Plaintiff's claims against Lit Smoke Shop are severable from this action under Federal Rule of Civil Procedure 21, which presents an independent basis for disregarding Lit Smoke Shop's citizenship for diversity purposes.  Grounds for removal are as

follows:

## I.    BACKGROUND

### A.    This Action

1.    Plaintiff Kevork Altounjian commenced this action on September 23, 2019, in the Superior Court of New Jersey, Bergen County, Civil Division, which is within the district and division to which this case is removed.  In this products liability action, Plaintiff alleges that he has "suffered from nicotine addiction and other physical and emotional injuries" through the use of JUUL vapor devices.  Complaint ("Compl.") ¶ 4.

2.    Plaintiff's Complaint seeks an unspecified amount of actual, compensatory and consequential damages from all defendants, as well as a preliminary or permanent injunction.  The Complaint alleges that JUUL products are defective, both in design and warning, and further asserts claims of civil conspiracy, fraud, negligence, unjust enrichment, and violations of the New Jersey Consumer Fraud Act § 56:8-2.  The Complaint asserts claims against entities allegedly responsible for the design, manufacture, and labeling of JUUL vapor products.

3.    To evade this Court's jurisdiction, the Complaint also purports to state claims against Lit Smoke Shop, LLC (the "Retailer Defendant" or "Lit Smoke Shop"), which allegedly sold JUUL products at retail to Plaintiff.  Because these claims fail as a matter of settled New Jersey law, Lit Smoke Shop is fraudulently joined.  Consequently, this Court should ignore the citizenship of that defendant in assessing its subject matter jurisdiction in this case.

4.    Alternatively, Plaintiff's claims against the Retailer Defendant are severable from this action under Federal Rule of Civil Procedure 21, which presents an independent basis for disregarding Lit Smoke Shop's citizenship for diversity purposes.

5.    JLI was served with the Summons and Complaint no earlier than October 8, 2019. PM USA was served no earlier than October 8, 2019.  Altria has not been served.  This Notice is

timely filed under 28 U.S.C. § 1446(b).

6.      As required under 28 U.S.C. § 1446(a), a copy of all process, pleadings, and orders served upon the Removing Defendants in the underlying state court action is attached as **Exhibit A**.

7.      All of the Removing Defendants join in and consent to this removal.  The consent of the fraudulently joined Retailer Defendant is not required.  28 U.S.C. § 1446(b); *see also Balazik v. Cty. of Dauphin*, 44 F.3d 209, 213 n.4 (3d Cir. 1995) ("The unanimity rule [in 28 U.S.C. § 1446(b)] may be disregarded where . . . a defendant has been fraudulently joined.").

     **B.      Ongoing Multidistrict Proceedings**

8.      On July 29, 2019, JLI moved the Judicial Panel on Multidistrict Litigation ("JPML") for an order transferring 10 federal cases presenting common questions of fact and law in six federal district courts and any subsequently filed tag-along cases, including cases such as this one, to the U.S. District Court for the Northern District of California for coordination or consolidation (the "MDL Motion").  *In re: JUUL Labs, Inc. Marketing, Sales Practices, and Products Liability Litig.*, MDL No. 2913.  On August 20, 2019, the remaining Removing Defendants joined JLI in seeking the same relief.

9.      On October 2, 2019, the JPML issued a Transfer Order, which transferred lawsuits against the Removing Defendants concerning JLI products in the Northern District of California, for assignment to the Honorable William H. Orrick III for coordinated and consolidated pretrial proceedings.  MDL 2913, Doc. 144.  The JPML thereafter issued additional Conditional Transfer Orders to transfer dozens of related actions to the Northern District of California.  *See, e.g.*, MDL 2913, Docs. 155, 168.  As cases continue to be filed in federal courts around the country, JLI will notify the Northern District of California that "tag-along" actions have been filed, leading to

additional transfers.

10. In view of the substantial factual overlap between this action and the numerous actions that have already been transferred and consolidated, JLI intends to notify the JPML that this is a "tag-along" action that should be transferred to the Northern District of California.

11. Pursuant to 28 U.S.C. § 1446(d), a copy of this Notice of Removal is being filed with the Superior Court of New Jersey, Bergen County, Civil Division.

## II.   THIS COURT HAS SUBJECT-MATTER JURISDICTION UNDER 28 U.S.C. § 1332

12. The Court has subject-matter jurisdiction over this case under 28 U.S.C. § 1332. Complete diversity of citizenship exists between Plaintiff and the properly joined Defendants, and the amount in controversy exceeds $75,000, exclusive of interest and costs.

### A.   There is Complete Diversity Between Plaintiff and the Properly Joined Defendants

13. Plaintiff is a citizen of New Jersey.  Compl. ¶ 4.

14. JLI is a Delaware corporation with its principal place of business in California. Compl. ¶ 6.

15. Altria is a Virginia corporation with its principal place of business in Virginia. Compl. ¶ 7.

16.  PM USA is a Virginia corporation with its principal place of business in Virginia. Compl. ¶ 8.

17. The Complaint also names Lit Smoke Shop as a defendant.  Compl. ¶ 10.  As discussed below, Lit Smoke Shop is fraudulently joined.  *See infra* at Section III.  Accordingly, although Plaintiff alleges that Lit Smoke Shop is a citizen of New Jersey, Lit Smoke Shop should be disregarded for purposes of determining diversity of citizenship.  *See, e.g.*, *Hogan v. Raymond Corp.*, 536 F. App'x 207, 210 (3d Cir. 2013) ("The fraudulent joinder doctrine permits courts to

ignore the citizenship of a non-diverse defendant for diversity purposes if the plaintiff's joinder of that defendant is 'fraudulent.'").  Alternatively, Plaintiff's claims against Lit Smoke Shop are severable under Federal Rule of Civil Procedure 21, such that its citizenship is irrelevant for diversity purposes.

18.     Accordingly, for purposes of diversity jurisdiction, there is complete diversity of citizenship between Plaintiff and the properly joined Defendants.

**B.     The Amount in Controversy Exceeds $75,000.**

19.     Under 28 U.S.C. §1332, subject matter jurisdiction based on diversity requires that the matter in controversy "exceed[] the sum or value of $75,000, exclusive of interest and costs." This requirement is met.  A notice of removal "need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold."  *Dart Cherokee Basin Operating Co. v. Owens*, 135 S. Ct. 547, 554 (2014).  "[T]he amount in controversy must be calculated based on a 'reasonable reading' of the complaint."  *Werwinski v. Ford Motor Co.*, 286 F.3d 661, 667 (3d Cir. 2002).  Where "plaintiff has not specifically averred in the complaint that the amount in controversy is less than the jurisdictional minimum," plaintiff must demonstrate "to a legal certainty that the plaintiff *cannot* recover the jurisdictional amount."  *Frederico v. Home Depot*, 507 F.3d 188, 197 (3d Cir. 2007); *Hann v. Home Depot*, 2019 WL 479348, at *3 (D.N.J. Feb. 7, 2019) (denying remand motion where complaint did not specify amount of damages because plaintiff failed to "show to a legal certainly that he cannot recover damages in excess of $75,000, or that he was never entitled to recover that amount").  "If a plaintiff challenges the defendant's amount-in-controversy allegations, a court will weigh the parties' proofs by a preponderance of the evidence."  *Alegre v. Atl. Cent. Logistics*, 2015 WL 4607196, at *2 (D.N.J. July 31, 2015).

20.     Here, the Complaint does not include a specific demand for damages.  Upon a full

and fair reading of the Complaint, however, the amount in controversy exceeds $75,000, exclusive of interest and costs.  The Complaint seeks actual, compensatory, and consequential damages for strict products liability, civil conspiracy, fraud, negligence and consumer fraud, as well as restitution for unjust enrichment.  Compl., Prayer for Relief.  While Plaintiff does not specify the amount of damages sought, he alleges that he has "suffered from nicotine addiction and other physical and emotional injuries" and "will continue to suffer from bodily injury; pain and suffering; disability; disfigurement; loss of the capacity for the enjoyment of life; aggravation of pre-existing conditions; medical and hospital care and expenses; rehabilitation expenses; and severe emotional distress."  Compl. ¶¶ 4, 107.  Based on these allegations, the amount in controversy exceeds the jurisdictional minimum.  Moreover, Plaintiff seeks attorneys' fees.  Compl., Prayer for Relief.  In cases such as this, attorneys' fees may be used to satisfy the amount in controversy threshold.

21.     Although the Removing Defendants do not concede that Plaintiff is entitled to damages or fees of any amount, a fair reading of the Complaint shows that the amount in controversy exceeds $75,000 for purposes of diversity of citizenship.

### III.     THE RETAILER DEFENDANT IS FRAUDULENTLY JOINED

22.     The Complaint includes one New Jersey defendant, the Retailer Defendant Lit Smoke Shop, in addition to the three out-of-state Removing Defendants.  The Retailer Defendant, however, is fraudulently joined and its citizenship should be disregarded for the purposes of determining diversity jurisdiction.

23.     "The doctrine of fraudulent joinder represents an exception to the requirement that removal be predicated solely upon complete diversity."  *In re Briscoe*, 448 F.3d 201, 215-16 (3d Cir. 2006).  Under this doctrine, "[i]n a suit with named defendants who are not of diverse citizenship from the plaintiff, the diverse defendant may still remove the action if it can establish

that the non-diverse defendants were 'fraudulently' named or joined solely to defeat diversity jurisdiction." *Id.* at 216.

24.     The doctrine of fraudulent joinder applies to a non-diverse defendant where "there is no reasonable basis in fact or colorable ground supporting the claim against the joined defendant, or no real intention in good faith to prosecute the action against the defendant or seek a joint judgment." *Reuter v. Medtronics, Inc.*, 2010 WL 46284239, at *3 (D.N.J. Nov. 5, 2010) (quoting *Boyer v. Snap-On Tools Corp.*, 913 F.2d 108, 111 (3d Cir. 1990)); *see also, e.g.*, *Boyer*, 913 F.2d at 111-12 (fraudulent joinder doctrine applies when "plaintiff fails to state a cause of action against the resident defendant, and the failure is obvious according to the settled rules of the state") (quoting 1A *Moore's Federal Practice* ¶ 0.161[2] at 274 (2d ed. 1989)).

25.     The determination of whether a non-diverse defendant has been fraudulently joined is based upon the plaintiff's pleadings at the time of removal.  *See Pullman Co. v. Jenkins*, 305 U.S. 534, 537-38 (1939) (whether removal was proper is "to be determined according to the plaintiffs' pleading at the time of the petition for removal"); *Hogan*, 536 F. App'x at 210–11 ("[I]n applying the fraudulent joinder doctrine, the district court must focus on the plaintiff's complaint at the time the petition for removal was filed." (internal quotation marks omitted)); *Perry v. ADT LLC*, , 2018 WL 1221172, at *1 n.1 (D.N.J. Jan. 23, 2018), *report and recommendation adopted*, 2018 WL 1221161 (D.N.J. Mar. 8, 2018) (same).  In addition, when evaluating the viability of a plaintiff's claims against a non-diverse defendant, courts "must look beyond the face of the complaint for indicia of fraudulent joinder."  *In re Briscoe*, 448 F.3d at 218 (quotation marks omitted); *Thomas v. Silgan Containers Mfg. Corp.*, 2018 WL 4223237, at *2 (D.N.J. Aug. 14, 2018), *report and recommendation adopted*, 2018 WL 4222394 (D.N.J. Sept. 5, 2018) (same); *Curtiss Wright Corp. v. CNA Fin. Corp.*, 2012 WL 1046536, at *2 (D.N.J. Mar. 28, 2012) (denying

remand motion and relying on affidavits in support of fraudulent joinder argument because "case law is clear that consideration of documents outside the complaint is permissible").

26.     The Retailer Defendant in this case has been fraudulently joined because "there is no reasonable basis in fact or colorable ground supporting the claim against the joined defendant." *Reuter v. Medtronics, Inc.*, 2010 WL 46284239, at *3 (D.N.J. Nov. 5, 2010). Any claims against the Retailer Defendant are barred as a matter of law by the New Jersey Products Liability Act and case law that squarely holds that other claims based on product defects, such as Plaintiff's claims here, are subsumed by the PLA. Moreover, Plaintiff's "Factual Allegations" do not direct a single allegation to the Retailer Defendant specifically, focusing instead on JLI's design of its vapor products, the health effects of nicotine, JLI's alleged concealment of the addictive nature of its products, JLI's marketing materials, and the relationship between JLI, Altria and PM USA. *See* Compl. ¶¶ 14-100. The only references to the Retailer Defendant are conclusory and do not establish any possible claim.

**A.      Plaintiff's Strict Liability Claims Against the Retailer Defendant Are Barred by the New Jersey Products Liability Act**

27.     In New Jersey, the Products Liability Act ("PLA"), N.J. Stat. Ann. § 2A:58C-1 *et seq*., "establishe[s] the sole method to prosecute a product liability action." *Kemly v. Werner Co.*, 151 F. Supp. 3d 496, 504 (D.N.J. 2015); *see also, e.g., Koruba v. Am. Honda Motor Co.*, 935 A.2d 787, 795 (N.J. App. Div. 2007) ("The PLA is the exclusive remedy for personal injury claims arising out of product use."). Plaintiff brings three claims for strict liability against the Retailer Defendant:  Count III (strict liability for failure to warn against all defendants); Count IV (strict liability for design defect against all defendants); and Count V (strict liability against only the Retailer Defendant). These claims are plainly governed by the PLA. *See Mathews v. Univ. Loft Co.*, 387 N.J. Super. 349, 356, 903 A.2d 1120, 1124 (App. Div. 2006) ("A cause of action for

8

failure to warn is governed by the New Jersey Products Liability Act"); *Kemly*, 151 F. Supp. 3d at

505 (applying PLA to defective design claim); *Repola v. Morbark Indus., Inc.*, 934 F.2d 483, 494

(3d Cir. 1991) (PLA subsumed common law failure to warn claim).

28.     The PLA leaves Plaintiff with no "reasonable basis" to assert strict liability claims

against the Retailer Defendant.  Indeed, the PLA immunizes "product sellers" from liability unless

they "exercised some significant control over the design, manufacture, packaging or labeling of

the product," "knew or should have known of the defect," or "created the defect."  N.J. Stat. Ann.

§ 2A:58C-9.  Thus, the PLA immunizes product sellers except under the following circumstances:

> (1) The product seller has exercised some significant control over
> the design, manufacture, packing or labeling of the product relative
> to the alleged defect in the product which caused the injury, death
> or damage; or
>
> (2) The product seller knew or should have known of the defect in
> the product which caused the injury, death or damage or the plaintiff
> can affirmatively demonstrate that the product seller was in
> possession of facts from which a reasonable person would conclude
> that the product seller had or should have had knowledge of the
> alleged defect in the product which caused the injury, death or
> damage; or
>
> (3) The product seller created the defect in the product which caused
> the injury, death or damage.

*Id.* § 2A:58C-9(d).

29.     Under the PLA, a "product seller" is defined as "any person who, in the course of

a business conducted for that purpose: sells; distributes; leases; installs; prepares or assembles a

manufacturer's product according to the manufacturer's plan, intention, design, specifications or

formulations; blends; packages; labels; markets; repairs; maintains or otherwise is involved in

placing a product in the line of commerce."  *Id.* § 2A:58C-8.

30.     The Retailer Defendant is a product seller under the PLA because, as alleged, it

sold the product in question; no more is alleged.  The Retailer Defendant did not exercise any

control, let alone significant control, "over the design, manufacture, packaging or labeling of the product."  Nor did the Retailer Defendant "create[] the defect" alleged in this case or know or should have known of that defect.

31.    The Complaint does not provide a "reasonable basis" for placing the Retailer Defendant within any of these carve-outs from the broad grant of immunity from suit.  The Complaint does not refer to the Retailer Defendant specifically anywhere in its factual allegations. Compl. ¶¶ 14-100.  To the contrary, the only allegations specific to the Retailer Defendant— outside of the allegations needed to identify the "Parties"—appears in Plaintiff's Ninth Cause of Action.  *Id.* ¶¶ 157-62.  Even there, however, Plaintiff does not allege that the Retailer Defendant exercised any control over the design, manufacture, packaging or labeling of JUUL products or that the Retailer Defendant caused the alleged defect in the products.  Again, the Retailer Defendant did not design or manufacture JUUL products and had no responsibility for the packaging or labeling of JUUL products.  Those actions were undertaken by JUUL.

32.    The Complaint also does not include any allegation that the Retailer Defendant "knew or should have known of the defect in the product which caused the injury, death or damage."  N.J. Stat. Ann. § 2A:58C-9(d)(2).  The only allegations concerning the Retailer Defendant's knowledge relate what *JUUL purchasers* may have known at the time of purchase and not what the Retailer Defendant itself knew:  "LIT SMOKE SHOP, LLC knew or should have known that the ultimate users and consumers would not and could not know that JUUL products are defective and unreasonably dangerous for Plaintiff."  Compl. ¶ 159.  These statements do not allege that the Retailer Defendant knew or should have known of an alleged defect in JUUL products.  The Retailer Defendant is therefore the type of seller the PLA is designed to immunize. *See, e.g.*, *Claypotch v. Heller, Inc.*, 823 A.2d 844, 851 (N.J. App. Div. 2003) (purpose of the PLA

is to "reduce litigation costs borne by innocent retailers in product liability actions" by relieving a seller of liability where it "had no significant responsibility for the alleged product defect"). Accordingly, the Retailer Defendant is immune from liability under the PLA.

      **B.**      **Plaintiff's Other Claims Against The Retailer Defendant Are Subsumed by the Product Liability Act and Therefore Barred**

33.      Plaintiff also brings claims for negligence, unjust enrichment, violations of the New Jersey Consumer Fraud Act, and preliminary and permanent injunctions against the Retailer Defendant. These claims are subsumed by the PLA and are therefore also barred by the immunity given to product sellers.

34.      The plain language of the PLA makes clear that the Act subsumes "any claim or action brought by a claimant for harm caused by a product, irrespective of the theory underlying the claim, except actions for harm caused by breach of an express warranty." N.J. Stat. Ann. § 2A:58C-1(b)(3); *see also In re Lead Paint Litig.*, 191 N.J. 405, 436-37 (2007) ("[T]he PLA is both expansive and inclusive, encompassing virtually all possible causes of action relating to harms caused by consumer and other products"). Courts therefore consistently hold that, regardless of their labels, product liability claims are governed by the PLA and not by common law. *See, e.g.*, *Indian Brand Farms v. Novartis Corp. Prot.*, 890 F. Supp. 2d 534, 547 (D.N.J. 2012) (dismissing statutory Consumer Fraud Act and common law misrepresentation claims "as subsumed by the PLA" because the "essential nature" of the plaintiff's allegations were "that of a traditional product liability action"); *McDarby v. Merck & Co.*, 949 A.2d 223, 277 (N.J. App. Div. 2008) (dismissing Consumer Fraud Act claims where plaintiff's allegations asserted "what, in essence, is a claim for failure to warn"); *Schraeder v. Demilec (USA) LLC*, 2013 WL 3654093, at *4 (D.N.J. July 12, 2013) (granting motion to dismiss unjust enrichment claim because it consisted of "nothing more than conclusory legal language used to dress up a claim that, in reality, sounds in product

liability"); *Fid. & Guar. Ins. Underwriters, Inc. v. Omega Flex, Inc.*, 936 F. Supp. 2d 441, 452 (D.N.J. 2013) (granting motion to dismiss negligence and implied warranty claims because they are not recognized by the PLA); *Clements v. Sanofi-Aventis, U.S., Inc.*, 111 F. Supp. 3d 586, 596 (D.N.J. 2015) (collecting cases and recognizing that "New Jersey law no longer recognizes breach of implied warranty, negligence, and strict liability as viable separate claims for harm deriving from a defective product").

35.     Plaintiff's claims against the Retailer Defendant for negligence, unjust enrichment, violation of the New Jersey Consumer Fraud Act, N.J. Stat. § 56:8-2 ("NJ CFA"), and preliminary and permanent injunction are in essence product liability claims focused on the design of JUUL products and the harm allegedly resulting from those products.  Plaintiff alleges, for example, that "defendants" were negligent because they breached a duty to "design[] a product that is not defective and unreasonably dangerous" and to "adequately warn[] of any reasonably foreseeable adverse events with respect to using the products."  Compl. ¶ 135.  He likewise alleges that defendants violated the NJ CFA when they "knowingly developed, sold, and promoted a product that contained nicotine levels in excess of cigarettes with the intention of creating and fostering long-term addiction to JUUL products for minors."  *Id*. ¶ 148.  As the result of this conduct, Plaintiff alleges that he "has in the past and will continue to suffer from bodily injury; pain and suffering; disability; disfigurement; loss of the capacity for the enjoyment of life; aggravation of pre-existing conditions; medical and hospital care and expenses; rehabilitation expenses; and severe emotional distress."  *Id*. ¶¶ 125, 133.

36.     These claims are product liability claims subsumed by the PLA and cannot be brought separately.  Accordingly, there is no possibility, let alone a reasonable possibility, that Plaintiff can establish these claims against the Retailer Defendant.  Accordingly, the Retailer

Defendant has been fraudulently joined and its citizenship should be ignored for purposes of diversity jurisdiction. *See, e.g.*, *Hogan*, 536 F. App'x at 210 ("This clear legal bar means that [plaintiff's] claims . . . are not colorable for purposes of fraudulent joinder.").

### C. There Is No Cause of Action for Preliminary and Permanent Injunction

37.     Plaintiff purports to assert a claim against the Retailer Defendant for "Preliminary and Permanent Injunction." *See* Comp. ¶¶ 152–156. There is no cause of action for an injunction under New Jersey law; a plaintiff must allege a substantive cause of action that provides the basis of an award of injunctive relief. *See Smajlaj v. Campbell Soup Co.*, 782 F. Supp. 2d 84, 91 (D.N.J. 2011) ("Plaintiffs also seek injunctive relief, which they mistakenly characterize as a cause of action."); *Educ. Impact, Inc. v. Danielson*, 2015 WL 381332, at *19 (D.N.J. Jan. 28, 2015) (dismissing cause of action for "injunctive relief" because "'an injunction is a remedy rather than a cause of action'") (quoting *Chruby v. Kowaleski*, 534 F. App'x 156, 160 n.2 (3d Cir. 2013)); *Tolia v. Dunkin Brands*, 2011 WL 6132102, at *6 (D.N.J. Oct. 7, 2011), *report and recommendation adopted*, 2011 WL 6132271 (D.N.J. Dec. 7, 2011) (stating that cause of action for "injunction" fails because "an injunction is a remedy and not by itself a cause of action"). Because there is no cause of action for an injunction under New Jersey law, there is no possibility that Plaintiff can state a claim against the Retailer Defendant on this claim.

### IV. In the Alternative, the Retailer Defendant Should Be Severed Under Federal Rule of Civil Procedure 21

38.     In the alternative, the citizenship of the Retailer Defendant can be disregarded because the claims against it are severable under Federal Rule of Civil Procedure 21 since the Retailer Defendant is a dispensable party under Rule 19. This presents an independent basis for disregarding the Retailer Defendant's citizenship for diversity purposes.

39.     Even where the face of a complaint suggests a lack of complete diversity, removal

based on diversity jurisdiction is nonetheless proper if the claims against the non-diverse defendants are severable under Federal Rule of Civil Procedure 21.  Defendants are severable under Rule 21 if they are unnecessary or dispensable under Rule 19.  Here, the Retailer Defendant should be severed under Rule 21 to preserve diversity jurisdiction as to the Removing Defendants.

40.     It is settled law that Rule 21 vests courts with the power "to allow a dispensable nondiverse party to be dropped at any time, even after judgment has been rendered."  *Newman–Green, Inc. v. Alfonzo–Larrain*, 490 U.S. 826, 832 (1989); *see also Burns v. Femiani*, 2019 WL 4390520, at *1, -- Fed. App'x -- (3d Cir. Sept. 13, 2019) (same); *Zambelli Fireworks Mfg. Co. v. Wood*, 592 F.3d 412, 422 (3d Cir. 2010) (severing non-diverse party pursuant to Rule 21 to create diversity jurisdiction).  Thus, as "the Supreme Court and Third Circuit have both held . . . where subject-matter jurisdiction is lacking due to . . . the presence of non-diverse parties, a federal court may, under Rule 21, sever the non-diverse, dispensable parties to retain diversity jurisdiction over the case."  *Slater v. Hoffman-La Roche Inc.*, 771 F. Supp. 2d 524, 529 (E.D. Pa. 2011).

41.     In deciding remand motions, courts have repeatedly severed non-diverse defendants under Rule 21 to perfect diversity jurisdiction over diverse defendants in analogous circumstances.  *Joseph v. Baxter International, Inc.*, 614 F. Supp. 2d 868 (N.D. Ohio 2009), is particularly instructive.  There, the plaintiffs, citizens of Louisiana, brought a products liability action against the out-of-state manufacturer of the drug Heparin.  *Id.* at 870.  Before the case was removed, the plaintiffs amended their complaint to add as defendants various non-diverse healthcare providers, alleging that they engaged in "negligent acts and omissions in the administration of Heparin."  *Id.* at 871.  Despite the addition of these non-diverse healthcare provider defendants, the district court denied remand as to the diverse manufacturer defendant.

42.     The court reasoned that the healthcare provider defendants were "not necessary

parties as the resolution of a claim against them would not necessarily resolve the [plaintiffs']
claim against [the manufacturer]"; the medical malpractice claims against the healthcare providers
"differ from the [plaintiffs'] products liability claim" against the manufacturer. *Id.* at 872. And,
the court explained, the healthcare provider defendants were dispensable because the plaintiffs
"retain an adequate remedy against the Healthcare Defendants as they can proceed with their
claims in state court." *Id.* at 873. Given the separate factual basis for plaintiffs' medical
malpractice claims against the healthcare providers, the court found that it could "sever them from
the claims against [the manufacturer], and in doing so, perfect diversity jurisdiction over [the
manufacturer]." *Id.* at 874.

43.     Numerous other courts have followed this approach and severed or dismissed
dispensable, non-diverse defendants under Rule 21, thereby preserving diversity jurisdiction. *See*,
*e.g.*, *Joseph v. Baxter Int'l, Inc.*, 614 F. Supp. 2d 868 (N.D. Ohio 2009); *Sullivan v. Calvert Mem'l
Hosp.*, 117 F. Supp. 3d 702, 705-07 (D. Md. 2015); *Cooke-Bates v. Bayer Corp.*, 2010 WL
3984830, at *4 (E.D. Va. Oct. 8, 2010); *Mayfield v. London Women's Care, PLLC*, 2015 WL
3440492, at *5 (E.D. Ky. May 28, 2015); *McElroy v. Hamilton Cty. Bd. of Educ.*, 2012 WL
12871469, at *2-3 (E.D. Tenn. Dec. 20, 2012); *Highland Capital Mgmt. LP.*, 198 F. App'x at 45;
*Walpert v. Jaffrey*, 127 F. Supp. 3d 105, 120 (S.D.N.Y. 2015); *Chamarac Properties, Inc. v. Pike*,
1992 WL 332234, at *17-18 (S.D.N.Y. Nov. 2, 1992); *Call Ctr. Techs., Inc. v. Grand Adventures
Tour & Travel Publ'g Corp., Inc.*, 2009 WL 10687800, at *8 (D. Conn. Nov. 19, 2009 ).

44.     Alleged joint tortfeasors like the Retailer Defendant are unnecessary parties as a
matter of settled law. *See Temple v. Synthes Corp.*, 498 U.S. 5, 7-8 (1990) (holding that joint
tortfeasors are not necessary parties under Rule 19); *Huber v. Taylor*, 532 F.3d 237, 250 (3d Cir.
2008) (citing *Temple* and explaining that "Courts . . . have long recognized that 'it is not necessary

for all joint tortfeasors to be named as defendants in a single lawsuit.'").

45.     Severance is particularly appropriate here because it will enable the diverse parties to benefit from the significant efficiencies stemming from participation in coordinated MDL proceedings in the Northern District of California.   Indeed, courts across the country have recognized the importance of these efficiencies in severing non-diverse defendants to perfect diversity jurisdiction.   *See, e.g.*, *Sullivan*, 117 F. Supp. 3d at 707 ("Severance is particularly appropriate in this case because it would allow for the transfer of [plaintiff's] claims against the [diverse manufacturer] to Multi-District Litigation."); *Sutton v. Davol, Inc.*, 251 F.R.D. 500, 505 (E.D. Cal. 2008) ("Plaintiffs' claims against the [non-diverse] Defendants are severed and remanded pursuant to Rule 21 . . . so as to preserve the removing Defendants' right to removal in the remaining multidistrict action and preserve the interests of judicial expediency and justice so that all pre-trial discovery on the products liability case can be coordinated in a single forum."); *Baxter*, 614 F. Supp. 2d at 873 ("[P]laintiffs will benefit from the MDL process:  they will not bear the burden of having to engage on their own, and at their sole expense, in discovery vis-à-vis [the diverse manufacturer]."); *Mayfield*, 2015 WL 3440492, at *5 ("[I]f the surviving federal claims are transferred to the Ethicon MDL, the prospect of dual litigation has undeniable upside.").

46.     Accordingly, the Retailer Defendant is neither necessary nor indispensable under Rule 19, and Plaintiff's claims against it should be severed under Rule 21.  Doing so leaves complete diversity of citizenship, since Plaintiff is a New Jersey citizen and the Removing Defendants are not.  *See* 28 U.S.C. § 1332(a).

47.     By filing this Notice of Removal, the Removing Defendants do not waive any defenses that may be available to them and expressly reserve all such defenses.

48.      If any question arises as to the propriety of the removal to this Court, the Removing

Defendants request the opportunity to present a brief and oral argument in support of their position that this case has been properly removed.  *See, e.g.*, *Dart Cherokee Basin*, 135 S. Ct. at 554.

## CONCLUSION

WHEREFORE, JUUL Labs Inc., Altria Group, Inc. and Philip Morris USA Inc. hereby remove this action from the Superior Court of New Jersey, Bergen County, Civil Division to the United States District Court for the District of New Jersey.

DATED:  November 7, 2019            /s/ *Edward F. McTiernan*

Edward F. McTiernan
ARNOLD & PORTER KAYE SCHOLER LLP
250 West 55th Street
New York, NY 10019-9710
Tel. (212) 836-8199
*Attorneys for Defendants Altria Group, Inc. and Philip Morris USA Inc.*

  /s/ *Marshall R. King*

Marshall R. King
Joseph Evall
Declan T. Conroy
GIBSON, DUNN & CRUTCHER
200 Park Avenue
New York, NY 10166-0193
Tel: (212) 351-3905
*Attorneys for Defendant JUUL Labs, Inc.*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a copy of the foregoing is being served upon the following by regular United States mail, postage prepaid:

Jeffrey L. Haberman
Scott P. Schlesinger
Jonathan R. Gdanski
SCHLESINGER LAW OFFICES, P.A.
1212 SE Third Avenue
Ft. Lauderdale, FL 3316
*Attorneys for Plaintiff*

Amin Elamroussi
27 Pointview Terr Apt 1
Bayonne, NJ 07002
*Registered Agent for Lit Smoke Shop LLC*

Dated:  November 7, 2019

/s/ *Edward F. McTiernan*